UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKIM ABD ALLAH,

                                    Plaintiff,

            v.                                              No. 16-CV-1841 (KMK)

ANTHONY ANNUCCI; CHERYL                          <u>OPINION & ORDER</u>
MORRIS; THOMAS GRIFFIN; JAIFA
COLLADO,

                                    Defendants.

<u>Appearances</u>:

Shakim Abd Allah
Comstock, NY
*Pro Se Plaintiff*

Bradley G. Wilson, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Shakim Abd Allah ("Plaintiff"), currently an inmate at Great Meadow

Correctional Facility, brings this pro se Action against Anthony Annucci ("Commissioner

Annucci"), Cheryl Morris ("Morris"), Thomas Griffin ("Superintendent Griffin"), and Jaifa

Collado ("Collado," and collectively, "Defendants"), alleging Defendants violated his rights

under the First and Fourteenth Amendments and New York State law when they denied

Plaintiff's attendance at certain religious events and failed to provide religious accommodations

while Plaintiff was incarcerated at Green Haven Correctional Facility.  (*See* Compl. (Dkt. No.

2).)  As a result of these alleged violations, Plaintiff contends that he could not "freely practice

his religion."  (*Id.* ¶ 48.)  Before the Court is Defendants' Motion To Dismiss the Complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). (*See* Dkt. No. 23.) For the reasons to follow, Defendants' Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are taken from the Complaint and the documents appended thereto, and are assumed true for the purpose of resolving the Motion.

#### 1. Denial of Attendance at Religious Events

On October 2 and October 8, 2015, Plaintiff was "denied his right to attend the Shi'ite religious event[s] of Ghadir Khum . . . and Mubahila." (Compl. ¶ 14.) On October 13, 2015, Plaintiff "filed a grievance" and "also wrote a letter to Defendant Collado dated [October 9, 2015] regarding the denial of his rights to attend these events." (*Id.*) The letter to Collado notified him that Plaintiff was "requesting approval to attend the 10 days of Ashura which started on [October 15, 2015] and finished on [October 24, 2015]." (*Id.*) On October 23, 2015, Plaintiff "sent a letter to Defendant Annucci, regarding his being denied attendance at the Shia Holy Days [o]f Ghadir Khum, Mubahila, and Ashura." (*Id.* ¶ 35.) On the same day, Plaintiff sent a letter to Defendant Morris. (*See id.* ¶ 38.) Plaintiff alleges that Commissioner Annucci and Morris never responded to his letters, (*see id.* ¶¶ 36, 38), and "Collado[] did not respond to Plaintiff['s] . . . letter until [November 5, 2015], after . . . Plaintiff . . . had already been denied attendance at Ashura," (*id.* ¶ 38).

Plaintiff asserts that he "was entitled to a hearing on his grievance within 16 calendar days of the receipt of his grievance" and that on December 18, 2015, he "sent a letter to [the Inmate Grievance Request Program ('IGRP')] Supervisor L. Stanway, requesting that his grievance . . . be sent to Superintendent Griffin for decision" within 21 days. (*Id.* ¶¶ 19–20.) On

January 11, 2016, Plaintiff "sent a letter to IGRP Supervisor L. Stanway requesting that his grievance be forwarded to [the Central Office Review Committee ('CORC') for] review and decision." (*Id.* ¶ 21.) Plaintiff alleges that "CORC failed to render a decision on both grievances within 30 days" in violation of certain regulations. (*Id.* ¶ 22.)

### 2. Accommodation of Other Faith Groups

Plaintiff contends that "Defendants recognize and provide accom[m]odations to many faith groups within the inmate population" and that these "religious groups are provided with a Chaplain that serves as a religious leader for the group." (*Id.* ¶¶ 39–40.) Additionally, "[i]nmates registered as members of a recognized group may attend their own congregational worship service and religious classes, facilitated by the Chaplain or an approved volunteer, or an approved inmate facilitator, and may observe religious holidays as listed on the annual [Department of Corrections and Community Supervision ('DOCCS')] religious calendar." (*Id.* ¶ 40.) Plaintiff avers that "all of the religious groups recognized . . . are also allowed to have a fund[]raiser to raise money to purchase religious text books and educational material about their faith." (*Id.* ¶ 41.)

Plaintiff alleges that "[t]he Islamic program offered by . . . Defendants is a Sunni Muslim religious program, because the Chaplain is a Sunni Muslim, the sermons during Juma'ah service focus on Sunni Muslim [t]eachings, . . . the majority of classes offered in DOCCS facilities are for Sunni Muslims, and the money raised through fund[]raisers is used to purchase Sunni Muslim texts and other educational material." (*Id.* ¶ 42.) "In sum," Plaintiff asserts, "the program is dominated, controlled[,] and officiated exclusively by Sunni Muslims," (*id.*), despite the fact that "there are more inmates that [i]dentify as Shia in the DOCCS system th[a]n there are inmates that belong to many of the religious groups that DOCCS currently recognize[s]," (*id.*

¶ 46).  Plaintiff asserts that "[a] Sunni Muslim . . . can[]not provide religious guidance and counseling to Shia Muslims."  (*Id.* ¶ 26.)  Furthermore, "Plaintiff . . . believes . . . that congregate prayer service on [F]riday, the Juma'ah service, [is] fundamental to the practice of his religion," (*id.* ¶ 29), and "that the leader of the congregate prayer during Juma'ah service must be a fellow Shia, who correctly leads prayer, and is mature, sane, just, and legitimate by birth," and that such prayer is "invalid if the leader does not meet these requirements," (*id.* ¶ 30).[1]

As a result of these alleged violations, Plaintiff seeks declaratory and injunctive relief, compensatory damages in the amount of $100,000, punitive damages, and "costs [and] [i]nterests to the extent permitted by law."  (*Id.* at 10–11.)

B.  Procedural History

Plaintiff filed the Complaint on March 11, 2016.  (*See* Dkt. No. 2.)  Plaintiff's request to proceed in forma pauperis was granted on March 16, 2016.  (*See* Dkt. No. 4.)  In a memo endorsement dated July 19, 2016, the Court issued a schedule for briefing on the instant Motion. (*See* Dkt. No. 19.)  On September 2, 2016, Defendants filed the instant Motion To Dismiss and accompanying papers.  (*See* Dkt. Nos. 23–27.)  On October 3, 2016, Plaintiff filed his papers in opposition.  (*See* Dkt. Nos. 28–30.)  Defendants filed their reply on October 21, 2016.  (*See* Dkt. No. 33.)

## II.  Discussion

A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical."

---

[1] In a section titled "Background of Shia and Sunni Differences," Plaintiff details his version of the history of and distinctions between Shia and Sunni Islam.  (*See* Compl. ¶¶ 23–34.)

*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (internal quotation marks omitted); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

     1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject

matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also Butler v. Ross*, No. 16-CV-1282, 2016 WL 3264134, at *3 (S.D.N.Y. June 14, 2016) (same). Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

### 2. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations,

alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a

dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015).  In deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

Defendants contend that Plaintiff's Complaint must be dismissed for two reasons: (1) Plaintiff did not exhaust his administrative remedies, and (2) Plaintiff failed to plausibly allege a violation of his constitutional rights with respect to the denial of attendance at two religious events.  (*See generally* Mem. of Law in Supp. of the Defs.' Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 24).)  Defendants also argue that the claims against Commissioner Annucci and Superintendent Griffin must be dismissed because these Defendants were not personally involved in the events giving rise to this Action.  (*See id.* at 7–9.)

1.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (per curiam) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures").  Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'"  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting

*Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

As a general matter, the New York State DOCCS Inmate Grievance Program ("IGP") outlines the procedures that apply to grievances filed by inmates in New York State correctional facilities. The IGP provides for a three-step grievance process. *See* 7 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 701 et seq.; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c))). Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence. *See* 7 N.Y.C.R.R. § 701.5(a)(1). The second step in the tripartite framework is for the grievant or any direct party to appeal the Inmate Grievance Review Committee's decision to the prison superintendent within seven calendar days after receipt of the written response, although the appealing party can seek an exception to the time limit, *see id.* § 701.5(c)(1). The third and final step is to appeal the superintendent's decision to the CORC, which the prisoner must do within seven days of the superintendent's written response to the grievance. *See id.* § 701.5(d)(1)(i). Here, too, an inmate may request an exception to the time limit, *see id.* "[O]nly after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

A plaintiff must exhaust his administrative remedies *before* filing his initial complaint in federal court. Indeed, "[w]hen a prisoner does not properly exhaust his administrative remedies

before filing suit, the action *must* be dismissed." *Mateo v. Alexander*, No. 08-CV-8797, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010); *see also Harris v. Gunsett*, No. 12-CV-3578, 2013 WL 3816590, at *6 (S.D.N.Y. July 22, 2013) (same). "This is so even if the claim has since been exhausted." *Mateo v. Ercole*, No. 08-CV-10450, 2010 WL 3629520, at *3 (S.D.N.Y. Sept. 17, 2010). In other words, "[s]ubsequent exhaustion after suit is filed . . . is insufficient," *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516, even where "'it might seem more efficient simply to proceed with the lawsuit rather than dismiss it only to see it immediately re-filed,'" *Harris*, 2013 WL 3816590, at *6 (quoting *Mateo v. Alexander*, 2010 WL 431718, at *3).

Defendants bear the burden of proving that Plaintiff failed to exhaust available administrative remedies. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."); *see also Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted)). Thus, a motion to dismiss for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint." *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents.").

While Defendants raise Plaintiff's failure to exhaust in their Motion To Dismiss, on February 28, 2017, Defendants filed a letter informing the Court that "subsequent to the filing of the Motion, CORC rendered a decision on Plaintiff's grievance." (Letter from Bradley G.

Wilson, Esq., to Court (Feb. 28, 2017) (Dkt. No. 36).)  Defendants concede that Plaintiff has now

exhausted his administrative remedies, but that "[t]his development [does] not change the fact

that Plaintiff had not exhausted his remedies before filing the Complaint."  (*Id.*)[2]

It is not clear from the face of the Complaint that Plaintiff did not fully exhaust his

administrative remedies before commencing this Action.  Plaintiff asserts that "CORC failed to

render a decision on both grievances within 30 days," (Compl. ¶ 22), but his Complaint is silent

as to whether CORC issued a decision before March 11, 2016, when Plaintiff filed the Complaint

in this Action.  Indeed, Plaintiff specifically pleads that he "exhausted his avenue of

administrative review for this grievance."  (*Id.* ¶ 49.)  Thus, the Court cannot find that

"nonexhaustion is clear from the face of the complaint."  *Lovick*, 2014 WL 3778184, at *4

(internal quotation marks omitted).

In any event, Plaintiff's failure to exhaust his administrative remedies before filing the

Complaint "is merely a temporary procedural flaw," *Wagnoon v. Johnson*, No. 02-CV-10282,

2004 WL 583764, at *3 (S.D.N.Y. Mar. 23, 2004) (dismissing the plaintiff's case without

prejudice so that he could reinstitute suit), and even were the Court to dismiss Plaintiff's

Complaint on this ground, such dismissal would be without prejudice, *see Berry v. Kerik*, 366

F.3d 85, 87 (2d Cir. 2004) (noting that where a plaintiff has failed to exhaust administrative

remedies, dismissal without prejudice is proper because the plaintiff can simply replead after he

exhausts); *McCoy*, 255 F. Supp. 2d at 252 ("A dismissal for failure to exhaust is usually without

---

[2] While Defendants' letter informs the Court of the rendering of a decision on a single grievance, Defendants acknowledge that as of the date of Plaintiff's Complaint, he had two grievances pending before CORC.  (*See* Defs.' Mem. 3–4 ("Plaintiff ultimately appealed two grievances to [CORC]: grievance number GH-81011-15, regarding denial of attendance at religious events, and GH-81171-15, regarding denial of religious practice as a Shi'ite Muslim.").)  It is unclear from Defendants' letter which of the two grievances is now administratively exhausted.

prejudice . . . because failure to exhaust is ordinarily a 'temporary, curable, procedural flaw.'" (quoting *Snider v. Melindez*, 199 F.3d 108, 111 (2d Cir. 1999))).  Plaintiff would only need to file an Amended Complaint to reinstitute this Action.  Thus, the Court proceeds to the merits of Plaintiff's claims.[3]

### 2.  Personal Involvement of Commissioner Annucci and Superintendent Griffin

Defendants contend that "this case should be dismissed against [D]efendants Annucci and Griffin because Plaintiff has not alleged that they were personally involved in depriving Plaintiff of a protected right."  (Defs.' Mem. 7.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)).  Relatedly, "[i]n an action under 42 U.S.C. § 1983, defendants cannot be held liable under a theory of respondeat superior," *Quezada v. Roy*, No. 14-CV-4056, 2015 WL 5547277, at *7 (S.D.N.Y. Sept. 18, 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); in other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the [law]," *Iqbal*, 556 U.S. at 676; *see also Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) ("Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." (internal quotation marks omitted)).

---

[3] Should the case proceed to summary judgment, the Court may revisit this issue.

The Second Circuit has set forth five ways in which a plaintiff may plead the personal involvement of a defendant:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (italics omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  However, the Second Circuit has recognized that the "[*Iqbal*] decision . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," *id.*, but has "thus far declined to resolve the question," *Golodner v. City of New London*, No. 14-CV-173, 2015 WL 1471770, at *7 (D. Conn. Mar. 31, 2015); *see also Fortunato*, 2015 WL 5813376, at *6 (noting that "the continuing validity of the *Colon* factors has been called into question by the Supreme Court's ruling in *Iqbal*").  Thus, courts in the Second Circuit are divided as to whether the five categories announced in *Colon* may still be used as bases for liability under § 1983.  *Compare, e.g.*, *Hollins v. City of New York*, No. 10-CV-1650, 2014 WL 836950, at *13 (S.D.N.Y. Mar. 3, 2014) (holding that only the first and part of the third categories in *Colon* survive *Iqbal*), *and Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (same), *aff'd*, 387 F. App'x 55 (2d Cir. 2010), *with Marom v. City of New York*, No. 15-CV-2017, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) ("The holding in *Iqbal* does not stand for the proposition that a supervisor can never be found personally liable for a constitutional deprivation on a showing that he was 'grossly negligent' or 'deliberately indifferent.'"), *partial reconsideration granted*, 2016 WL 5900217 (S.D.N.Y. July 29, 2016), *and Sash v. United States*, 674 F. Supp. 2d 531, 544

(S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."), *and Delgado v. Bezio*, No. 09-CV-6899, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (holding that if "the claim does not require a showing of discriminatory intent, the *Colon* analysis should still apply, insofar as it is consistent with the particular constitutional provision alleged to have been violated" (internal quotation marks omitted)). Some courts have simply concluded that, in the absence of Second Circuit precedent suggesting otherwise, they will continue to apply the *Colon* factors. *See, e.g.*, *Demeo v. Koenigsmann*, No. 11-CV-7099, 2017 WL 2937619, at *7 n.10 (S.D.N.Y. July 7, 2017) ("Although the Second Circuit had acknowledged that it was an open issue whether all of the types of personal involvement outlined above (the '*Colon* factors') survive *Iqbal*, it appears that they do, as demonstrated by . . . recent Second Circuit opinions . . . that continue to cite the *Colon* factors." (third italics added) (citations omitted)); *Tolliver v. Skinner*, No. 12-CV-971, 2017 WL 1017649, at *4 (S.D.N.Y. Mar. 13, 2017) ("[A] plaintiff may establish such personal involvement by making any one of five showings (the '*Colon* factors'), including by showing that the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong. This remains the law in [the Second] Circuit, absent a Circuit decision otherwise." (citation and internal quotation marks omitted)). On balance, "[t]he majority of the district courts . . . have held that, absent any contrary directive from the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *El-Hanafi v. United States*, No. 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015) (alteration and internal quotation marks omitted). This Court has already expressed its

agreement with those cases holding that all five categories under *Colon* are still valid unless and until the Second Circuit holds otherwise, *see Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4–5 (S.D.N.Y. Jan. 24, 2017), and so it will do so here.

As Defendants note, the sole allegations with respect to Commissioner Annucci and Superintendent Griffin are that they each "deprived Plaintiff of his federally protected rights," (Compl. ¶¶ 4, 8), that "Superintendent Griffin failed to render a decision on . . . Plaintiff['s] . . . grievance within 21 days," (*id.* ¶ 17), that Commissioner Annucci "refused to reply to Plaintiff['s] . . . letter" regarding the denial of attendance at religious events, (*id.* ¶ 36), and that both Defendants "have allowed the [u]nconstitutional DOCCS policy of refusing to treat Shia Muslim inmates equal to other religious sub[-]groups that DOCCS currently recognize[s] to continue," (*id.* ¶ 50).

"[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Greenwaldt v. Coughlin*, No. 93-CV-6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995); *accord Rivera v. Bloomberg*, Nos. 11-CV-629, 11-CV-4325, 2012 WL 3655830, at *6 (S.D.N.Y. Aug. 27, 2012) ("Even if the [c]omplaints could be read to suggest that Commissioner Schriro failed to act, a prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official exhibited deliberate indifference by failing to act on information indicating that the violation was occurring." (alterations and internal quotation marks omitted)); *Ward v. LeClaire*, No. 07-CV-6145, 2008 WL 3851831, at *3 (W.D.N.Y. Aug. 14, 2008) ("Although [the] [p]laintiff further alleges that he sent [the defendant] letters about lack of enforcement of [a facility] policy and that [certain defendants] did not respond to his many written complaints, the [c]ourt finds that

16

such allegations, accepted as true, do not constitute personal involvement for purposes of § 1983 liability." (citations omitted)); *Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (finding allegations that an inmate wrote to prison officials and was ignored insufficient to hold those officials liable under § 1983); *see also Woodward v. Perez*, No. 12-CV-8671, 2014 WL 4276416, at *8 (S.D.N.Y. Aug. 29, 2014) ("It is well-established that a supervisory defendant's receipt of a single letter identifying an alleged wrong is insufficient for liability under [§] 1983."); *Scarbrough v. Evans*, No. 09-CV-850, 2010 WL 3730897, at *9 (N.D.N.Y. Aug. 10, 2010) ("The allegation that the superintendent ignored [the] plaintiff's letter, even if true, is nonetheless insufficient without more to establish the requisite personal involvement on his part in the constitutional violations alleged."); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability." (citations omitted)). Indeed, "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." *Walker v. Pataro*, No. 99-CV-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002) (report and recommendation) (italics omitted); *see also Dean v. Lantz*, No. 08-CV-749, 2009 WL 2151173, at *6 (D. Conn. Jul. 17, 2009) ("[T]he fact that a supervisory official ignored a prisoner's letter of protest or referred the letter to other officials for response does not establish the requisite personal involvement of the supervisory official."); *Thomas v. Coombe*, No. 95-CV-10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13,

1998) (finding that ignoring a letter from an inmate is insufficient to establish personal involvement).[4]

Nor are Defendants liable as a result of the supervisory nature of their positions. "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Colon*, 58 F.3d at 874 ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a plaintiff's] claim.").

Here, Plaintiff alleges that Commissioner Annucci and Superintendent Griffin did not correct a policy of unequal treatment of inmates based on their religion, but he does not claim that these Defendants participated in the alleged deprivation. Plaintiff's theory of liability appears to be grounded in the mere fact that Defendants were in charge of the prison. Such conclusory allegations are insufficient to sustain a claim. *See Alsaifullah*, 2013 WL 3972514, at

---

[4] "Courts in [the Second] Circuit are divided, however, regarding whether a supervisor who reviews and ultimately denies a grievance can be considered personally involved in the unconstitutional act underlying the grievance." *Garcia v. Watts*, No. 08-CV-7778, 2009 WL 2777085, at *15 (S.D.N.Y. Sept. 1, 2009) (collecting cases). "Some courts have attempted to harmonize this conflict by applying the same standard to both letters and grievances, i.e. finding personal involvement only when the supervisor's response is detailed and specific." *Id.* at 16 (italics omitted) (collecting cases). Still "[o]ther courts in [the Second] Circuit have applied a different standard and found personal involvement only when the grievance alleges an ongoing constitutional violation that the supervisory official who reviews the grievance can remedy directly." *Id.* (internal quotation marks omitted) (collecting cases).

In the instant case, there is no allegation that Superintendent Griffin actually reviewed Plaintiff's grievance and Plaintiff does not allege that he sent any letters to Superintendent Griffin directly. (*See* Compl. ¶ 17 ("Superintendent Griffin failed to render a decision on . . . Plaintiff['s] . . . grievance within 21 days.").) As to Commissioner Annucci, Plaintiff's letter to him encloses a copy of Plaintiff's grievance and "request[s] that [the Commissioner's] officer direct the Inmate Grievance Supervisor to log and acknowledge this grievance as well as process the grievance in a timely fashion." (Compl. Ex. H.) Plaintiff does not request that Commissioner Annucci review the grievance or remedy the alleged violation. Indeed, Plaintiff's grievance was eventually processed as requested.

*17 ("[The p]laintiff fails to allege that [the superintendent] was aware of such alleged policy and, accordingly, [the p]laintiff's conclusory allegations are insufficient to demonstrate the personal involvement of [the superintendent]."); *Miner v. Goord*, 646 F. Supp. 2d 319, 326 (N.D.N.Y. 2009) (dismissing the plaintiff's "claims that [the superintendent] created a policy which permitted unconstitutional practices to occur" because "[t]hese conclusory allegations are insufficient to show the personal involvement of [the superintendent]").  Accordingly, Plaintiff's claims against Commissioner Annucci and Superintendent Griffin are dismissed.[5]

### 3.  Denial of Attendance at Religious Events

Defendants contend that the failure to allow Plaintiff to attend two Shi'ite holy day events does "not represent a substantial burden on Plaintiff's free exercise of religion."  (Defs.' Mem. 10.)

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), which includes the right to participate in religious services, *see Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993).  A prisoner's First Amendment rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system."  *Ford*, 352 F.3d at 588 (internal quotation marks omitted); *see also Weathers v. Rock*, No. 12-CV-1301, 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014) (explaining that the right of inmates to freely exercise a chosen religion "is not limitless, and may be subject to restrictions relating to legitimate penological concerns").

---

[5] Defendants do not move to dismiss Defendants Morris and Collado based on their lack of personal involvement.  (*See generally* Defs.' Mem.)  However, should Plaintiff choose to amend his pleadings, he should be careful to allege the personal involvement of all Defendants in the purported violations.

Accordingly, a prisoner's free exercise claims are "judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Ford*, 352 F.3d at 588 (internal quotation marks omitted).

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration and internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."); *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) ("At the motion to dismiss stage, a complaint must assert sufficient allegations necessary to establish that [the] plaintiff's claim is based upon a sincerely held religious belief." (alteration and internal quotation marks omitted)).[6]  In determining whether a belief is "sincere," "an individual . . . need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (alteration and internal quotation marks omitted).  Moreover, "[a] substantial burden on religious exercise exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015)

_____

[6] The Second Circuit recently explained that "[i]t has not been decided in [the Second] Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014).  The Second Circuit chose not to confront this question—or rather, not to alter the previous assumption that the substantial burden test is a threshold question. *Id.* at 221.  Accordingly, this Court "will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid." *Weathers*, 2014 WL 4810309, at *4; *see also Williams v. Fisher*, No. 11-CV-379, 2015 WL 1137644, at *16 (N.D.N.Y. Mar. 11, 2015) (same).

(internal quotation marks omitted).  The Second Circuit has further specified that "[t]he relevant question in determining whether [the plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice."  *Ford*, 352 F.3d at 593–94.  "Once [a] plaintiff establishes this burden, the defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct."  *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19, 2012) (alteration and internal quotation marks omitted).  The burden then shifts to the inmate "to show that these articulated concerns were irrational."  *Salahuddin v. Goord*, 467 F.3d at 275 (alteration and internal quotation marks omitted).

Defendants do not contest the sincerity of Plaintiff's religious beliefs.  The Court, therefore, will assume for the purpose of resolving the instant Motion that Plaintiff's religious beliefs are sincerely held.  The Court thus turns to whether Plaintiff has adequately alleged that his ability to exercise his religious beliefs was substantially burdened by Defendants' conduct.

"In the Second Circuit, courts have held that preclusion from attending two religious services is not, without more, a 'substantial burden' on a plaintiff's free exercise of religion."  *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 588 (S.D.N.Y. 2015); *see also Jean-Laurent v. Los*, No. 12-CV-132, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 9, 2015) (noting "[c]ourts within the Second Circuit have consistently held that missing two religious services does not pose a substantial burden on an inmate's religion" and collecting cases); *Blalock v. Jacobsen*, No. 13-CV-8332, 2014 WL 5324326, at *7 (S.D.N.Y. Oct. 20, 2014) ("Courts in [the Second] Circuit, however, have held that the conduct [the plaintiff] challenges—the denial of two religious services—does not substantially burden an inmate's right to religious observation."); *Shapiro*, 2014 WL 1276479, at *11 ("[N]ot permitting a prisoner to attend two religious services is a de

minimis, or insubstantial, burden on an inmate's ability to freely exercise his religion." (italics and internal quotation marks omitted)).  Here, however, Plaintiff repeatedly refers to Ghadir Khum and Mubahila as "Holy Days," and specifically alleges that the events are "unique to Shi'ism." (Compl. ¶ 32; *see also id.* ¶¶ 35, 37.)  These allegations are made in conjunction with claims that Plaintiff suffered from additional deprivations, including the denial of a Shia Muslim Chaplain to lead Juma'ah service, which he specifically avers is "fundamental to the practice of his religion," and the inability to hold fundraisers to purchase Shia educational material.  (*See id.* ¶¶ 29, 41–42.)[7]

Thus, construing Plaintiff's Complaint liberally and drawing all reasonable inferences from the factual allegations in Plaintiff's favor, the Court finds that Plaintiff has adequately pleaded that the religious events were "'central or important' to [his] faith," *Rossi*, 2015 WL 769551, at *8 (quoting *Ford*, 352 F.3d at 593–94); *see also Smith*, 2012 WL 929848, at *8 ("At this stage, the Court finds that plaintiff has alleged sufficient facts to establish that missing three consecutive Jum[a]'ah services while housed in keeplock substantially burdens his right to attend congregate religious services.").  In conjunction, these allegations sufficiently state a plausible claim for a First Amendment violation.  Accordingly, the Court denies Defendants' Motion To Dismiss on this basis.[8]

---

[7] Plaintiff further avers that without a Shia leader, "the congregate prayer is invalid," suggesting that the practice of having a Shia leader is central to his religion.  (Compl. ¶ 30.)

Additionally, while the Supreme Court has noted that "Jum[a]'ah is commanded by the Koran and must be held every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer," *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987), the Court notes that the test is subjective and requires the plaintiff to allege that the religious event or practice is central or important to *his* practice of his faith.  *See Rossi*, 2015 WL 769551, at *7 ("[The plaintiff] must show that it burdens a religious practice that is central or important to his practice of religion." (internal quotation marks omitted)).

[8] As Defendants identify, Plaintiff filed grievances related to the denial of attendance at the religious events of Ghadir Khum and Mubahila.  (*See* Compl. ¶ 14 ("On October 13, 2015,

## III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted as to all claims against Commissioner Annucci and Superintendent Griffin and denied as to Plaintiff's claims regarding his denial of attendance at Ghadir Khum and Mubahila as against Morris and Collado.

In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, those claims that are dismissed are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. The failure to do so may result in the dismissal of Plaintiff's claims with prejudice. If Plaintiff files no Amended Complaint, the Court will assume Plaintiff intends only to proceed with the claims regarding failure to provide equal accommodations to Shi'ite Muslims and state law claims against Defendants Morris and Collado.

The Clerk of Court is respectfully requested to terminate the pending Motion, (*see* Dkt. No. 23), and mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket. SO ORDERED.

Dated:     September 7̶ , 2017
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

Plaintiff . . . filed a grievance regarding his being denied his right to attend the Shi'ite religious event[s] of Ghadir Khum . . . and Mubahila.").) While Plaintiff's letters to Collado and Commissioner Annucci referenced the Muslim holy event of Ashura, (*see id.* ¶¶ 35, 37–38), Plaintiff does not allege that he filed a grievance in connection with his being denied attendance at Ashura. Accordingly, any claims with respect to Plaintiff's attendance at Ashura have not been administratively exhausted.