UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKIM ABD ALLAH,

                              Plaintiff,

            v.                                          No. 16-CV-1841 (KMK)

ANTHONY ANNUCCI; CHERYL                                 <u>OPINION & ORDER</u>
MORRIS; THOMAS GRIFFIN; JAIFA
COLLADO,

                              Defendants.

<u>Appearances</u>:

Shakim Abd Allah
Comstock, NY
*Pro Se Plaintiff*

Bradley G. Wilson, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Shakim Abd Allah ("Plaintiff"), currently an inmate at Great Meadow

Correctional Facility, brings this pro se Action against Commissioner Anthony Annucci

("Annucci"), Cheryl Morris ("Morris"), Superintendent Thomas Griffin ("Griffin"), and Jaifa

Collado ("Collado," and collectively, "Defendants"), alleging Defendants violated his rights

under the First and Fourteenth Amendments and New York State law when they denied

Plaintiff's attendance at certain religious events and failed to provide religious accommodations

while Plaintiff was incarcerated at Green Haven Correctional Facility.  (*See* Am. Compl. (Dkt.

No. 44).)  As a result of these alleged violations, Plaintiff contends that he could "not freely

practice his religion."  (*Id.* ¶ 48.)  Before the Court is Defendants' Motion To Dismiss the

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See*

Notice of Motion (Dkt. No. 47).)  For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are taken from the Amended Complaint and the documents appended to the Complaint, and are assumed true for the purpose of resolving the Motion.[1]

#### 1.  Denial of Attendance at Religious Events

On October 2 and October 8, 2015, Plaintiff was "denied his right to attend the Shi'ite religious event[s] of Ghadir Khum . . . and Mubahila."  (Am. Compl. ¶ 14.)  On October 13, 2015, Plaintiff "filed a grievance" and "also wrote a letter to Defendant Collado dated [October 9, 2015] regarding the denial of his right[] to attend these events."  (*Id.*)  The letter to Collado notified him that Plaintiff was "requesting approval to attend the 10 days of Ashura, which started on [October 15, 2015] and finished on [October 24, 2015]."  (*Id.*)  On October 23, 2015, Plaintiff "sent a letter to Defendant Annucci, regarding his being denied attendance at the Shia Holy Days of Ghadir Khum[], Mubahila, and Ashura."  (*Id.* ¶ 35.)  On the same day, Plaintiff sent a letter to Morris.  (*See id.* ¶ 38.)  Plaintiff alleges that Annucci and Morris never responded to his letters, (*see id.* ¶¶ 36, 38), and that "Collado[] did not respond to Plaintiff['s] . . . letter until [November 5, 2015], after . . . Plaintiff . . . had already been denied attendance at Ashura," (*id.* ¶ 38).

---

[1] Plaintiff submitted various exhibits to his initial Complaint, but did not attach them to the Amended Complaint.  (*See* Compl. Ex. A–H (Dkt. No. 2).)  Because Plaintiff is pro se and is clearly relying on these exhibits to support his allegations in the Amended Complaint, the Court will consider them.  *See Blakely v. Lew*, No. 13-CV-2140, 2013 WL 6847102, at *1 n.1 (S.D.N.Y. Dec. 30, 2013) (considering exhibits attached only to the original complaint because "it is clear that [the] [p]laintiffs intended to attach [them] to the [a]mended [c]omplaint"), *aff'd*, 607 F. App'x 15 (2d Cir. 2015).

Plaintiff asserts that he was entitled to a hearing on his grievance "within 16 days of the receipt of . . . his grievance" and that on November 16, 2015, he "sent a letter to the [I]nmate [G]rievance [Request] P[]rogram [('IGRP')] Supervisor Ms. L. Stanway, requesting that his grievance be passed on to Superintendent Griffin" for decision within 21 days. (*Id.* ¶¶ 15–17.) Plaintiff alleges that the Central Office Review Committee ("CORC") "failed to render a decision on both grievances within 30 days," in violation of certain regulations. (*Id.* ¶ 22.)[2]

## 2. Accommodation of Other Faith Groups

Plaintiff contends that "Defendants recognize and provide accom[m]odations to many faith groups within the inmate population." (*Id.* ¶ 39.) "According to [Department of Corrections and Community Supervision ('DOCCS')] [D]irective 4202 religious groups are provided with a chaplain that serves as a religious leader for the group." (*Id.* ¶ 40.) Additionally, "[i]nmates registered as members of a recognized group may attend their own congregational worship service[s] and religious classes, facilitated by the chaplain or an approved volunteer, or an approved inmate facilitator, and may observe religious holidays as listed on the annual DOCCS religious calendar." (*Id.*) Plaintiff avers that "all of the religious groups recognized . . . are also allowed to have a fund[]raiser to raise money to purchase religious text books and educational material about their faith." (*Id.* ¶ 41.)

Plaintiff alleges that "[t]he Islamic program offered by . . . [D]efendants is a Sunni Muslim religious program, because the chaplain is a Sunni Muslim, the sermons during Jumah service focus on Sunni Muslim [t]eachings, . . . the majority of classes offered in DOCCS facilities are for Sunni Muslims, and the money raised through fund[]raisers is used to purchase

---

[2] Plaintiff also filed a grievance for the lack of religious accommodations provided to Shia Muslims, discussed below. *See infra* Section II.A.2.

Sunni Muslim texts and other educational material." (*Id.* ¶ 42.)[3] "In sum," Plaintiff asserts, "the program is dominated, controlled[,] and officiated exclusively by Sunni Muslims," (*id.*), despite the fact that "there are more inmates that [i]dentify as Shia in the DOCCS system th[a]n there are inmates that belong to many of the religious groups that DOCCS currently recognize[s]," (*id.* ¶ 46). Plaintiff asserts that "[a] Sunni Muslim . . . can[]not provide religious guidance and counseling to Shia Muslims." (*Id.* ¶ 26.) Furthermore, "Plaintiff . . . believes . . . that congregate prayer service on [F]riday, the Jumah service, [is] fundamental to the practice of his religion," (*id.* ¶ 29), and "that the leader of the congregate prayer during Jumah service must be a fellow Shia, who correctly leads the prayer, and is mature, sane, just, and legitimate by birth," and that the prayer is "invalid if the leader does not meet these requirements," (*id.* ¶ 30).[4] Accordingly, Plaintiff "can[]not freely practice his religion in an environment dominated and controlled by Sunni Muslims." (*Id.* ¶ 48.)

On October 28, 2015, Plaintiff "filed a grievance" regarding his "right to practice his faith as a Shi'ite Muslim, and . . . object[ing] to the unequal treatment of Shi'ite Muslims" compared to other faith groups. (*Id.* ¶ 18.) On January 11, 2016, Plaintiff "sent a letter to IGRP Supervisor L. Stanway requesting that his grievance be forwarded to [CORC for] review and decision." (*Id.* ¶ 21.) This grievance was consolidated with the grievance regarding Plaintiff's denial of attendance at religious holidays. (*Id.* ¶ 22.) On December 21, 2016, CORC rendered

---

[3] According to Plaintiff, DOCCS currently recognizes three variants of Islam—Moorish Science Temple, Nation of Gods and Earths, and Nation of Islam—in addition to Sunni Islam, and accordingly "provide[s] separate services and other accommodations for four variants of Islam." (Am. Compl. ¶¶ 43–44.)

[4] In a section titled "Background of Shia and Sunni Differences," Plaintiff details his understanding of the history of and distinctions between Shia and Sunni Muslims. (*See id.* ¶¶ 23–34.)

"a final decision . . . advis[ing] Plaintiff to address his concerns to the facility Iman." (*Id.*) The grievance response, signed by Griffin, found:

> According to the investigation grievant J [sic] was not permitted to attend the 10 days of Ashura because he did not request participation and his religious designation is Islam. The Shiite participate in Jumah Services with the Muslim community. Religious holy days are recognized in accordance with the Religious Holy Day Calendar. Religious classes are available to all Muslims on Tuesdays and Wednesdays. The Shiite have separate classes scheduled on Tuesday evenings. The DSP has not received a request for fund raising from the Shiite, therefore fund raising requests have not been denied. The Shiite have been allowed to have a volunteer clerk to assist the Imam. A paid clerk will not be approved at this time as the religious needs for the 14 registered Shiite are being met by the Imam. . . .
>
> The claim that grievant A [sic] was denied attendance to Shiite events. The available callout requests were reviewed and were found to indicate that the grievant's allegation that he was denied attendance to be [sic] without merit.

(*See* Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") 5 (Dkt. No. 51).) Plaintiff points out that directing a Shi'ite Muslim to a Sunni Muslim chaplain "clearly shows that CORC does not recognize the antagonistic differences between Shia [a]nd Sunni [M]uslims." (Am. Compl. ¶ 22.)

As a result of these alleged violations of his constitutional and statutory rights, Plaintiff seeks declaratory and injunctive relief, compensatory damages in the amount of $100,000, punitive damages, and "[c]osts [and] [i]nterests to the extent permitted by law." (*Id.* ¶ 84.)[5]

---

[5] To the extent that Plaintiff seeks to bring a class action and assert claims on behalf of third parties, (*see* Am. Compl. ¶ 53 (stating Defendants "fail[ed] to grant [Plaintiff] and all other Shia Muslims the same rights and privileges as other religious groups . . .")), such claims are dismissed. It is well settled that a "pro se plaintiff may not act as the representative of a class." *Terio v. Johann*, No. 05-CV-5918, 2006 WL 2819659, at *1 n.4 (S.D.N.Y. Sept. 29, 2006), *aff'd*, 257 F. App'x 374 (2d Cir. 2007) (citing *Phillips v. Tobin*, 548 F.2d 408, 413–15 (2d Cir. 1976); *see also* 28 U.S.C. § 1654 ("[T]he parties may plead and conduct their own cases personally or by counsel."); *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) ("Although § 1654 thus recognizes that an individual generally has the right to proceed pro se with respect to his own claims or claims against him personally, the statute does not permit unlicensed laymen to represent anyone else other than themselves." (alterations, italics, and internal quotation marks omitted)); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)

B.  Procedural History

Plaintiff filed his initial Complaint on March 11, 2016.  (*See* Dkt. No. 2.)  Plaintiff's

request to proceed in forma pauperis was granted on March 16, 2016.  (*See* Dkt. No. 4.)  On

September 2, 2016, Defendants filed their first Motion To Dismiss and accompanying papers.

(*See* Dkt. Nos. 23–26.)  On October 3, 2016, Plaintiff filed his papers in opposition.  (*See* Dkt.

Nos. 28–30.)  Defendants filed their reply on October 21, 2016.  (*See* Dkt. No. 33.)  On

September 7, 2017, the Court issued an Opinion and Order dismissing all of Plaintiff's claims

against Annucci and Superintendent Griffin and denying the first Motion as to Plaintiff's claims

against Morris and Collado regarding his denial of attendance at Ghadir Khum and Mubahila.

(*See* Dkt. No. 41.)  *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517 (S.D.N.Y. Sept. 7,

2017).  In light of Plaintiff's pro se status and because it was the first adjudication of Plaintiff's

claims on the merits, the Complaint was dismissed without prejudice and Plaintiff was given

thirty days to file an amended complaint.  (*See id.*)

On October 2, 2017, the Amended Complaint was docketed.  (*See* Am. Compl.)  In a

memo endorsement dated November 14, 2017, the Court issued a briefing schedule for the

instant Motion.  (*See* Dkt. No. 46.)  On December 14, 2017, Defendants filed the instant Motion

To Dismiss and accompanying papers.  (*See* Dkt. Nos. 47–48.)  On March 9, 2018, the Court

received Plaintiff's opposition to the Motion.  (*See* Pl.'s Mem.)  Defendants filed their reply on

January 29, 2018.  (*See* Dkt. No. 50.)[6]

("[B]ecause pro se means to appear for one's self, a person may not appear on another person's
behalf in the other's cause").

[6] The respective dates of Plaintiff's and Defendants' filings indicate Defendants received
Plaintiff's opposition papers before the Court.  (*See* Dkt Nos. 50–51.)

## II.  Discussion

### A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Analysis

Defendants argue that the claims against Annucci, Griffin, and Morris must be dismissed because Plaintiff failed to allege their personal involvement in any constitutional violation. (*See* Mem. of Law in Supp. of the Defs.' Mot. To Dismiss ("Defs.' Mem.") 6–9 (Dkt. No. 48).) Defendants also argue that Plaintiff's claims for injunctive relief are moot, or, in the alternative, should be severed and transferred to the Northern District of New York. (*See id.* at 9–12.)

### 1. Personal Involvement of Commissioner Annucci, Superintendent Griffin, and Morris

Defendants contend that "Plaintiff has not pleaded sufficient facts to show personal involvement on the part of [D]efendants Annucci, Griffin, and Morris" in any deprivation of Plaintiff's rights.  (Defs.' Mem. 7.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations and italics omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  "In an action under 42 U.S.C. § 1983, defendants cannot be held liable under a theory of respondeat superior," *Quezada v. Roy*, No. 14-CV-4056, 2015 WL 5547277, at *7 (S.D.N.Y. Sept. 18, 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); in other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the [law]," *Iqbal*, 556 U.S. at 676.  Therefore, Plaintiff must plausibly allege conduct by each individual defendant that falls into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the

five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

### a. Commissioner Annucci

Plaintiff has failed to plausibly allege Annucci's personal involvement in the alleged constitutional violation. Plaintiff alleges that he sent Annucci a letter regarding attendance at the Shia Holy Days of Ghadir Khum, Mubahila, and Ashura, (Am. Compl. ¶ 35), but Annucci never responded, (*id.* ¶ 36). In his opposition to Defendants' Motion to Dismiss, Plaintiff contends that Annucci was personally involved because "[P]laintiff's grievance went all the way to central office" and Annucci "has direct authority to remedy the [P]laintiff's complaint at the highest level of [DOCCS] but refuses [t]o do so, there[]by sanctioning the unconstitutional acts complained of." (Pl.'s Mem. 2.) Plaintiff also avers that Annucci "deprived . . . [P]laintiff of his federally protected rights, by creating a policy or custom under which the unconstitutional practices complained of . . . occurred, or has allowed the continuance of such a policy or custom." (Am. Compl. ¶ 4.) Additionally, "Annucci, having the power to remedy the unconstitutional practices complained of[,] failed to remedy the wrongs complained of, or has otherwise exhibited deliberate indifference to the rights of Shi'ite Muslim inmates by failing to act on information indicating that unconstitutional acts were occurring [sic]." (*Id.*)

As explained in the Court's prior opinion, "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Greenwaldt v. Coughlin*, No. 93-CV-6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995); *accord Rivera v. Bloomberg*, No. 11-CV-629, 2012 WL 3655830, at *6 (S.D.N.Y. Aug. 27, 2012) ("Even if the [c]omplaints could be read to suggest that [the] [c]ommissioner . . . failed to act, a prisoner's

allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official exhibited deliberate indifference by failing to act on information indicating that the violation was occurring." (alterations and internal quotation marks omitted)); *Ward v. LeClaire*, No. 07-CV-6145, 2008 WL 3851831, at *3 (W.D.N.Y. Aug. 14, 2008) ("Although [the] [p]laintiff further alleges that he sent [the defendant] letters about lack of enforcement of [a facility] policy and that [certain defendants] did not respond to his many written complaints, the [c]ourt finds that such allegations, accepted as true, do not constitute personal involvement for purposes of § 1983 liability." (citations omitted)); *Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (finding allegations that an inmate wrote to prison officials and was ignored insufficient to hold those officials liable under § 1983); *see also Woodward v. Perez*, No. 12-CV-8671, 2014 WL 4276416, at *8 (S.D.N.Y. Aug. 29, 2014) ("It is well-established that a supervisory defendant's receipt of a single letter identifying an alleged wrong is insufficient for liability under [§] 1983."); *Scarbrough v. Evans*, No. 09-CV-850, 2010 WL 3730897, at *9 (N.D.N.Y. Aug. 10, 2010) ("The allegation that the superintendent ignored [the] plaintiff's letter, even if true, is nonetheless insufficient without more to establish the requisite personal involvement on his part in the constitutional violations alleged."); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability." (citations omitted)). Indeed, "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." *Walker v. Pataro*, No. 99-CV-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002) (report and recommendation) (italics omitted); *see also Dean v. Lantz*, No. 08-CV-749, 2009 WL 2151173,

at *6 (D. Conn. Jul. 17, 2009) ("The fact that a supervisory official ignored a prisoner's letter of protest or referred the letter to other officials for response does not establish the requisite personal involvement of the supervisory official."); *Thomas v. Coombe*, No. 95-CV-10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (finding that ignoring a letter from an inmate is insufficient to establish personal involvement).

Nor can Annucci be held personally liable for constitutional violations merely "because, [as Commissioner], he was in a high position of authority" at DOCCS. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (affirming summary judgment in favor of the Commissioner of [DOCCS]); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (explaining that "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority" (internal quotation marks omitted)); *Colon*, 58 F.3d at 874 ("The bare fact that [the Commissioner of DOCCS defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a plaintiff's] claim."). "Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." *Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) (internal quotation marks omitted). Personal involvement requires "a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (same).

In an attempt to overcome this hurdle, Plaintiff alleges in his Amended Complaint that Annucci "creat[ed] a policy or custom under which unconstitutional practices complained of . . . occurred, or has allowed the continuance of such a policy or custom;" "failed to remedy the wrongs complained of;" and "exhibited deliberate indifference to the rights of Shi'ite Muslim inmates by failing to act on information indicating that unconstitutional acts were occurring."

(Am. Compl. ¶ 4.)  These conclusory allegations are devoid of any details as to Annucci's conduct and represent the kind of threadbare allegations that courts routinely find to be insufficient.  *See, e.g.*, *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *12 (S.D.N.Y. Mar. 9, 2017) (dismissing conclusory allegation of supervisor liability).  While Plaintiff parrots almost word for word the second, third, and fifth *Colon* prongs in his Amended Complaint, the Second Circuit has long taught that "merely recit[ing] the legal elements of a successful § 1983 claim for supervisory liability . . . does not meet the plausibility pleading standard."  *Dotson v. Farrugia*, No. 11-CV-1126, 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012); *see also Samuels v. Fischer*, 168 F. Supp. 3d 625, 636–67 (S.D.N.Y. 2016) (noting that allegations that "attribute conduct to one or more of [the defendants] that largely mirrors—or is at least very similar—the wording of one of the *Colon* prongs without further factual development . . . cannot make out a claim of personal involvement." (citations omitted)).  Plaintiff's theory of liability appears to be grounded in the mere fact that Annucci was in charge of the prison.  Such an allegation is insufficient to sustain a claim.  *See Alsaifullah*, 2013 WL 3972514, at *17 ("[The p]laintiff fails to allege that [the superintendent] was aware of such alleged policy and, accordingly, [the p]laintiff's conclusory allegations are insufficient to demonstrate the personal involvement of [the superintendent]."); *Miner v. Goord*, 646 F. Supp. 2d 319, 326 (N.D.N.Y. 2009) (dismissing the plaintiff's "claims that [the superintendent] created a policy which permitted unconstitutional practices to occur" because "[t]hese conclusory allegations are insufficient to show the personal involvement of [the superintendent]").  Accordingly, Plaintiff's claims against Annucci are dismissed.

<u>b.  Defendant Morris</u>[7]

Plaintiff also fails to plausibly allege Morris's personal involvement in the alleged constitutional deprivations.  Plaintiff alleges Morris "deprived Plaintiff of his federally protected rights by creating a policy or custom under which the unconstitutional practices complained of occurred, ha[s] allowed the continuance of such a policy or custom[,] and ha[s] failed to act on information indicating that unconstitutional acts were occurring."  (Am. Compl. ¶ 6.) Additionally, Plaintiff claims that he wrote Morris a letter regarding his denial of attendance at the Holy Days of Ghadir Khum, Mubahila, and Ashura, but Morris never responded.  (*Id.* ¶ 38). Plaintiff's allegations regarding Morris's personal involvement are almost identical to the allegations against Annucci, and for the same reasons explained above, the claims against Morris are dismissed.

<u>c.  Superintendent Griffin</u>

Plaintiff has plausibly alleged Griffin's personal involvement in the alleged constitutional deprivations from insufficient Shi'ite accommodations.  Plaintiff alleges Griffin "exhibit[ed] deliberate indifference to the rights of Shi'ite inmates, by failing to act on information indicating that unconstitutional acts were occurring;" "was grossly negligent in supervising his subordinates who committed the wrongful acts complained of;" and, by denying Plaintiff's grievance, "effectively sanctioned and condoned the continuance of policies and customs that deprive . . . Plaintiff" of his constitutional rights.  (Am. Compl. ¶ 8.)  More specifically, Griffin allegedly signed the response to Plaintiff's grievance, (Pl.'s Mem. 5), and Plaintiff alleges the issues raised

---

[7] In Plaintiff's opposition to the Motion, he writes "[w]ith regards to [D]efendants Morris and Collado . . . [P]laintiff foregoes any claims to monetary or punitive damages to all [D]efendant[s] except [D]efendant [C]ollado[;] this move is made in an attempt to absolve [P]laintiff of the onerous burden of having his entire complaint dismissed."  (Pl.'s Mem. 2.)  The Court nonetheless decides the Motion as to Plaintiff's claims against Morris.

in his grievance regarding attendance of religious events and denial of religious accommodates "are all issues that Superintendent Griffin has the power to remedy but refused to do so." (Am. Compl. ¶ 8.) In his opposition to the Motion to Dismiss, Plaintiff also notes that Griffin's response to Plaintiff's grievance "contains a detailed and specific response." (Pl.'s Mem. 2.)

The Second Circuit noted in dictum some years ago that it is "questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of." *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Since then, "[c]ourts in [the Second] Circuit [have been] divided regarding whether a supervisor who reviews and ultimately denies a grievance can be considered personally involved in the unconstitutional act underlying the grievance." *Garcia v. Watts*, No. 08-CV-7778, 2009 WL 2777085, at *15 (S.D.N.Y. Sept. 1, 2009) (collecting cases); *see also Thomas v. Calero*, 824 F. Supp. 2d 488, 507–08 (S.D.N.Y. 2011) (discussing division and collecting cases). Courts have typically considered three different factors to determine whether a prison official was personally involved based on the denial of a grievance:

> The first factor was the distinction between simply affirming the denial of a grievance and reviewing and responding to a prisoner's complaint by undertaking some kind of investigation . . . Second, some courts drew a distinction between a pro forma denial of a grievance and a detailed and specific response to a grievance's allegations. Finally, some courts looked to whether the alleged constitutional violation complained of in a grievance was ongoing such that the supervisory official who reviews the grievance can remedy it directly, finding personal involvement only in cases dealing with ongoing violations.

*Thomas*, 824 F. Supp. 2d at 507 (alterations, internal quotation marks, and citations omitted). The Court agrees with those cases holding that "an alleged constitutional violation complained of in a grievance must be ongoing in order to find personal involvement, such that the supervisory official who reviews the grievance can remedy it directly." *Burton v. Lynch*, 664 F. Supp. 2d 349, 361–62 (S.D.N.Y. 2009) (alteration and internal quotation marks omitted); *see also Hall v.*

16

*Leclaire*, No. 06-CV-946, 2007 WL 1470532, at *10 (S.D.N.Y. May 22, 2007) ("An appropriate guiding principle is that where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation that he can remedy directly."), *adopted in part, rejected in part on other grounds*, 2007 WL 2815624 (S.D.N.Y. Sept. 28, 2007); *see also Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) (same); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."). The district court in *Burton* outlined three reasons, which the Court finds persuasive, in reaching this determination:

> First, the Supreme Court has repeatedly emphasized that respondeat superior liability is not available in a [§] 1983 action. Requiring an ongoing constitutional violation which is "capable of mitigation at the time the supervisory official was apprised thereof," *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989), ensures that a Superintendent is not held liable for every constitutional tort committed by a subordinate solely by virtue of his role as the intermediate appellate level in the inmate grievance process.

> Second, "to avoid holding a supervisor liable solely for a subordinate's violations [in a § 1983 action] a court must apply 'rigorous standards of culpability and causation.'" *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). "Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate," because the violation is not "ongoing and the defendant has [no] opportunity to stop the violation after being informed of it." *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009).

> Third, the language in the Second Circuit's *Colon* opinion and prior cases dictates that a Superintendent who "failed to remedy the violation after being informed of it by report or appeal" will be deemed personally liable. *Colon*, 58 F.3d at 873 (emphasis added). A superintendent cannot "remedy" a violation of constitutional rights which has already ceased by ordering some change in prison conditions.

*Burton*, 664 F. Supp. 2d at 361–62 (S.D.N.Y. 2009) (footnotes and italics omitted). Thus, the Court considers whether the two grievances Plaintiff filed complained of "ongoing" violations which Griffin could "remedy" to determine whether Griffin was personally involved in the alleged violation of Plaintiff's constitutional rights. *Id.*

To begin, Plaintiff's grievance regarding the deficiencies of the Islamic program alleged an "ongoing" constitutional violation regarding the fact that "the chaplain is a Sunni Muslim, the sermons during Jumah service focus on Sunni Muslim [t]eachings, . . . the majority of classes offered in DOCCS facilities are for Sunni Muslims, and the money raised through fund[]raisers is used to purchase Sunni Muslim texts and other educational material." (*Id.* ¶ 42.)[8] Moreover, based on Plaintiff's allegations, it is plausible that Griffin, as the supervisory official who reviewed the grievance, could have remedied it directly. *See Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *16 (S.D.N.Y. Mar. 30, 2018) (finding the "[p]laintiff ha[d] sufficiently alleged an 'ongoing' constitutional violation regarding his lack of access to regular Jewish services . . . And, [the defendant], as the supervisory official who reviewed the grievance, could have remedied it directly"); *Thomas*, 824 F. Supp. 2d at 507 (noting personal involvement established where "the alleged constitutional violation complained of in a grievance was ongoing such that the supervisory official who reviews the grievance can remedy it directly"); *see also Young v. Choinski*, 15 F. Supp. 3d 172, 192 (D. Conn. 2014) (noting that "if the supervisory official is confronted with an ongoing constitutional violation and reviews a grievance or appeal regarding that violation, that official is 'personally involved' if he or she can remedy the violation directly" (internal quotation marks omitted)); *Phillip v. Schriro*,

---

[8] Defendants do not move to dismiss Plaintiff's religious accommodation claims on the merits. Thus, for the purpose of deciding the instant Motion, the Court assumes the alleged constitutional violations are meritorious.

No. 12-CV-8349, 2014 WL 4184816, at *5 (S.D.N.Y. Aug. 22, 2014) (finding contact from grievance committee to wardens regarding repeated denial of attendance at religious services sufficiently alleged ongoing violation defendant could remedy). Thus, Plaintiff has sufficiently alleged Griffin's personal involvement as to the claims of insufficient Shi'ite accommodations.

However, Plaintiff's claims regarding denial of attendance at religious events do not satisfy the "ongoing" constitutional violation standard. Plaintiff did not grieve an ongoing pattern or practice of being denied attendance at religious events. Rather, he grieved being denied attendance at two discrete events. (Am. Compl. ¶ 14.) This harm had ceased when he filed his grievance, and there was no ongoing situation that Griffin could have remedied at the time he responded to the grievance. (*Id.*) Thus, Plaintiff has failed to sufficiently allege Griffin's personal involvement as to the claims he was denied attendance at religious events. *See Burton*, 664 F. Supp. 2d at 363 (finding no ongoing violation for grievance regarding alleged beating that "relates to a past harm which has ceased"). The Court therefore grants in part and denies in part Griffin's Motion to Dismiss for lack of personal involvement.

### 2. Claims for Declaratory and Injunctive Relief

Defendants argue that Plaintiff's claims for declaratory and injunctive relief are moot, (Defs.' Mem. 9–10), because Plaintiff was transferred from Green Haven to Great Meadow after the Complaint was filed, (*see* Dkt. Nos. 37, 38 (notifying the Court of Plaintiff's change of address)). "It is settled in th[e] [Second] Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996); *see also Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Lipscomb v. Hufford*, No. 14-CIV-6562, 2017 WL 3267732, at *4

(S.D.N.Y. July 28, 2017) (collecting cases).  Accordingly, any claim for declaratory and injunctive relief is moot.

Plaintiff argues in his Opposition that the "exception[] to the mootness doctrine for cases that are 'capable of repetition, yet avoiding review'" applies to his case because Plaintiff has been transferred to and from Green Haven five different times and may return if he becomes eligible for a preference transfer because Green Haven is the closest suitable facility to where he is from.  (Pl.'s Mem. 3.)  "The capable-of-repetition doctrine applies only in two exceptional situations, where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Commer v. Dist. Council 37*, No. 94-CV-8462, 2003 WL 21692816, at *5 (S.D.N.Y. July 21, 2003) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).  The threat of injury "must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citations omitted).

To begin, Plaintiff has not alleged the challenged conduct is "too short" to be fully litigated.  *See, e.g.*, *Lipscomb*, 2017 WL 3267732, at *4 (finding claim would not "have been impossible to litigate the issue during his period of confinement" where the complaint raised an issue arising in the facility in August 2012 and he was transferred in May 2014); *Richardson v. Vermont*, No. 15-CV-120, 2016 WL 7157027, at *6 (D. Vt. Nov. 4, 2016) (finding claim for injunctive relief moot where the plaintiff "d[id] not set forth any allegations indicating that the purported constitutional violations were of such a limited duration that he was unable to fully litigate them"), *adopted by* No. 2016 WL 7156484 (D. Vt. Dec. 7, 2016), *appeal dismissed* (2d Cir. Apr. 6, 2017); *Martin v. Gold*, No. 05-CV-28, 2007 WL 474005, at *4 (D. Vt. Feb. 8, 2007)

(finding claims "would not evade review" were the plaintiff "transferred back" and subject to the same conditions, because the plaintiff "could file another motion for preliminary injunctive relief"); *cf. Lloyd v. City of New York*, 43 F. Supp. 3d 254, 270 (S.D.N.Y. 2014) (finding exception satisfied because facility where alleged violations occurred "is a jail, housing pre-trial detainees and individuals who are sentenced for periods of less than one year . . . All residents are by definition supposed to be [at the facility] for a short period of time—generally not long enough to permit a federal civil rights lawsuit to run its course.").

Additionally, Plaintiff's claim that he could be transferred back to Green Haven is too speculative to qualify for the exception. Plaintiff avers that he has been transferred back and forth on five different occasions, and that if Plaintiff goes two years without a disciplinary action, he could be eligible for a preference transfer that could put him back in Green Haven. (Pl.'s Mem. 3.) However, none of these assertions creates a "reasonable expectation" he will return to Green Haven any time soon. *Commer*, 2003 WL 21692816, at *5 (internal quotation marks omitted). Put differently, the possibly of his return to Green Haven is neither "real" nor "immediate." *Lyons*, 461 U.S. at 102; s*ee also Robinson v. Uhler*, No. 16-CV-232, 2017 WL 4075178, at *2 (N.D.N.Y. Aug. 14, 2017) (concluding that "[w]hile mindful of the fact that DOCCS may freely transfer [the p]laintiff between facilities, the [c]ourt is unable to discern any basis other than speculation for concluding that [the p]laintiff will be returned to Upstate" (citation omitted)), *adopted by* 2017 WL 4075191 (N.D.N.Y. Sept. 13, 2017); *Martin*, 2007 WL 474005, at *4 (noting that "[w]hile it is certainly possible that [the plaintiff] might be sent back to [the prior facility], he has made no showing of a 'reasonable expectation' that he will be returned to that institution . . . such an argument would likely be speculative, and courts have generally held that this sort of speculation about a re-transfer is insufficient to overcome the

mootness rule"); *see also Preiser v. Newkirk*, 422 U.S. 395, 403 (1975) (dismissing case alleging transfer without due process as moot because "[a]ny subjective fear [the plaintiff] might entertain of being again transferred . . . or of suffering adverse consequences as a result of the . . . transfer, is indeed remote and speculative"). Thus, the Court grants Defendant's Motion to Dismiss Plaintiff's claim for declaratory and injunctive relief as moot.

### 3. State Law Claims

To the extent that Plaintiff seeks to pursue state law claims against Defendants, those claims are barred pursuant to Section 24 of the New York Correction law.[9] "It is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ieradi v. Sisco*, 119 F.3d 183, 186 (2d Cir. 1997); *see also Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015), *aff'd*, 879 F.3d 41 (2d Cir. 2018) (same). The Second Circuit has held that Section 24 operates to prevent federal courts from exercising supplemental jurisdiction over state law claims appended to § 1983 claims. *See Ieradi*, 119 F.3d at 186–87 ("It is well settled that [§] 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of

---

[9] Section 24 provides, in relevant part:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department ..., in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24.

the statute. Such immunity is available whether the action is pursued in a state court or, under pendent jurisdiction, in a federal court." (citations omitted)); *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir. 1996) (same)

Nevertheless, "the protection afforded by [§] 24 is not absolute," but rather "limited . . . to acts or omissions occurring within the scope of an officer's employment and in the discharge of his or her duties." *Ieradi*, 119 F.3d at 187 (alterations and internal quotation marks omitted). Here, Plaintiff's allegations regarding the alleged denial of attendance at holiday observances and the lack of accommodation for Shi'ite Muslims practices are by their very nature based on Defendants' actions within the scope of their employment. *See Hassell*, 96 F. Supp. 3d at 385 (holding that "state law claims for money damages against various DOCS and Parole officials in their personal capacity" relating to the imposition of invalid PRS terms fall within the ambit of New York Correction Law § 24). Accordingly, because "only the New York State Court of Claims has proper jurisdiction to hear Plaintiff's state law claims because he has alleged acts that clearly fall within the scope of [the defendants'] employment duties," *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *12 n.8 (S.D.N.Y. Sept. 30, 2015) (alteration and internal quotation marks omitted), the Court is obligated to dismiss those claims for lack of subject matter jurisdiction, *see Tavares v. N.Y.C. Health & Hosps. Corp.*, No. 13–CV–3148, 2015 WL 158863, at *10 (S.D.N.Y. Jan. 13, 2015) ("State-law claims for damages against DOCCS employees within the scope of their employment must be brought in the New York Court of Claims as claims against New York State.").

## III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted as to all claims against Annucci and Morris, granted as to Griffin regarding Plaintiff's claims for denial of

attendance at Ghadir Khum and Mubahila, granted as to Plaintiff's claims for declaratory and injunctive relief against all Defendants, and granted as to Plaintiff's state law claims against all Defendants. The Motion is denied as to Plaintiff's claims regarding failure to provide equal accommodations to Shi'ite Muslims against Superintendent Griffin. Thus, Plaintiff may proceed with the claims regarding failure to provide equal accommodations against Defendants Griffin and Collado and denial of attendance at Ghadir Khum and Mubahila against Collado.

Because Plaintiff has already been given an opportunity to amend his Complaint, (see Dkt. No. 44), the dismissed claims are dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and internal quotation marks omitted)).

The Clerk of Court is respectfully requested to terminate the pending Motion, (*see* Dkt. No. 47), and mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket.

The Court will hold a status conference on October 17, 2018 at 10:00 a.m. The Parties should be prepared to discuss a case management plan at the conference.

SO ORDERED.

Dated:    September 21, 2018
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

24